## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Sylvia Mathlock, as mother and next friend of J.R., a minor, | ) ) ) ) ) | |
| Plaintiff, | ) ) ) | No. 1:18: |
| v. | ) ) | JURY TRIAL DEMANDED |
| ERIC FLEMING, in his individual capacity; NAJUAN MACK, in his individual capacity; LEONARD DIXON, in his individual capacity and official capacity as Superintendent of the Cook County Juvenile Temporary Detention Center; OFFICE OF THE CHIEF JUDGE OF THE CIRCUIT COURT OF COOK COUNTY, in its official capacity as Administrator of the Cook County Juvenile Temporary Detention Center; and COUNTY OF COOK, ILLINOIS | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT AT LAW

Plaintiff SYLVIA MATHLOCK, as mother and next of friend of J.R., a minor, by and through attorneys, Hart McLaughlin & Eldridge LLC and Action Injury Law Group LLC, states as follows for the Complaint at Law against Defendants ERIC FLEMING, in his individual capacity, NAJUAN MACK, in his individual capacity, LEONARD DIXON, in his individual capacity and official capacity as Superintendent of the Cook County Juvenile Temporary Detention Center, OFFICE OF THE CHIEF

JUDGE OF THE CIRCUIT COURT OF COOK COUNTY, in its official capacity as Administrator of the Cook County Juvenile Temporary Detention Center; and COUNTY OF COOK, ILLINOIS (collectively, "Defendants"), states as follows:

## Nature of the Action

1.      J.R., a 15-year old minor, was detained and housed at the Cook County Juvenile Temporary Detention Center ("JTDC") on July 19, 2018 where he was subjected to unlawful excessive force resulting in the breaking of his right arm. This is an action brought, in part, pursuant to 42 U.S.C. § 1983 to redress the deprivation of rights secured under the Constitution or laws of the United States and for claims of violations of state law that are so related to other claims in this action within the court's original jurisdiction such that they form part of the same case or controversy under Article III of the United States Constitution. Plaintiff seeks compensatory damages, punitive damages, an award of attorneys' fees and costs, and any other relief this Court deems just and proper.

## Parties

2.      J.R. ("Plaintiff") is a 15-year old boy weighing approximately 140 lbs. J.R. is identified by his initials pursuant to Federal Rule of Civil Procedure 5.2. On July 19, 2018, J.R. was detained and housed at the JTDC. At all times, J.R. had legal rights established by the Constitution of the United States and laws set forth by statutes.

3.      Sylvia Mathlock ("Ms. Mathlock" or "Plaintiff") is the mother of J.R. Pursuant to Federal Rule of Civil Procedure 17, Ms. Mathlock brings this Complaint as parent and next friend of J.R., a minor.

4.      Defendant Eric Fleming ("Mr. Fleming") is an adult male who is a member of the Rapid Response Team responsible for the safety and security at the JTDC. Plaintiff sues Mr. Fleming in in his individual capacity. At all relevant times material to this Complaint, Mr. Fleming was an employee or agent of the JTDC and acted in the course and within the scope of his employment. At all relevant times material to this Complaint, Mr. Fleming acted under color of state law.

5.      Defendant Najuan Mack ("Mr. Mack") is an adult male who is a member of the Rapid Response Team at the JTDC. The Rapid Response Team is responsible for the safety and security of the facility. Plaintiff sues Mr. Mack in in his individual capacity. At all relevant times material to this Complaint, Mr. Mack was an employee or agent of the JTDC and acted in the course and within the scope of his employment. At all relevant times material to this Complaint, Mr. Mack acted under color of state law.

6.      Defendant Leonard Dixon ("Superintendent Dixon") is the Superintendent of the JTDC. Plaintiff sues Superintendent Dixon in his individual and official capacity. Superintendent Dixon is a person subject to suit pursuant to 42 U.S.C. § 1983.

7.     Defendant Office of Chief Judge of the Circuit Court of Cook County is sued in its official capacity. The Office of Chief Judge of the Circuit Court of Cook County is the Administrator of the JTDC.

8.     Defendant County of Cook ("Cook County") is a county in Illinois. The JTDC is operated as a branch of Cook County's government. Cook County established and operates the JTDC, and it supports, funds, and maintains the facility. Cook County is obligated to indemnify judgments entered against the JTDC arising from the operation of the JTDC. Plaintiffs join Cook County pursuant to *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2003).

## Jurisdiction and Venue

9.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this is an action arising under 42 U.S.C. § 1983.

10.     The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the claims providing the basis for federal subject matter jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

11.     The Court has personal jurisdiction over Defendants because they reside in Illinois and their conduct described herein occurred exclusively in Illinois.

12.     Venue is proper in this jurisdiction under 28 U.S.C. § 1391 because Plaintiff's injury and damages occurred in the Northern District of Illinois, Defendants reside and conduct business in the Northern District of Illinois, and virtually all of the events or omissions giving rise to this action occurred in this

Northern District of Illinois, and this is a convenient and reasonable forum for the resolution of this dispute.

## Factual Background

### The JTDC

13. As Superintendent Dixon has noted, "[juvenile] detention is like the emergency room of the juvenile justice system." For that reason, Superintendent Dixon has explained, rather than an incarceration-style setting, "[o]ur thing is to have some normalcy when they [detained children] come here."

14. The JTDC is a five-story building near the intersection of Ogden Avenue and Roosevelt Road, a few miles southwest of downtown Chicago. It is among the largest juvenile detention facilities in the country, housing between 250 and 400 children from the ages of 10 to 18. The average stay for a child at the JTDC is approximately three weeks.

15. In 1999, the ACLU filed a federal civil rights class action lawsuit alleging systematic mistreatment and neglect of children housed at the JTDC. *See Doe v. Cook County*, 99-cv-3945 (N.D. Ill). After a series of federal court orders, including a Memorandum of Agreement, Agreed Supplemental Order and a Modified Implementation Plan, County of Cook entered into a settlement agreement in the lawsuit.

16. On August 14, 2007, after concluding that the Cook County's executive branch was not complying with the terms of the settlement agreement, the District Court appointed a transitional administrator to operate the JTDC and bring it into

substantial compliance with the Memorandum of Agreement, Agreed Supplemental Order and the Modified Implementation Plan and to prepare the JTDC for the transition of administrative authority over its operations to the Office of the Chief Judge of the Circuit Court of Cook County.

17.     In 2007, the Illinois Legislature passed Public Act 095-0194 (House Bill 236) allowing for the administrative control of the JTDC to transition from the Cook County Board to the Office of Chief Judge of the Circuit Court of Cook County, effective January 1, 2008. Notwithstanding, the JTDC would remain under control of the District Court's temporary administrator for several years thereafter.

18.     The District Court later determined that the JTDC could be returned to local control and ordered that control of the JTDC be transferred from the temporary administrator back to local control in 2015.

19.     In May 2015, the Office of Chief Judge of the Circuit Court of Cook County appointed Superintendent Dixon as the JTDC's new superintendent.

<u>The Excessive Force</u>

20.     On July 19, 2018, J.R., a juvenile detained in the environment of the JTDC, had different needs and different capacities than an adult.

21.     On July 19, 2018, Mr. Mack and Mr. Fleming – two grown adults with different capacities than a 140-lb minor – engaged in a physical altercation with J.R.

22.     Mr. Mack and Mr. Fleming aggressively pulled back J.R.'s arms, handcuffed him, and continued exerting excessive force thereby, breaking J.R.'s arm.

23. Specifically, the excessive force caused J.R. to have extreme internal rotation and a displaced fracture of the surgical neck of the right humerus and breaking off of the humerus head requiring surgical correction.

24. J.R. has suffered actual and extreme physical and emotional injuries, and other damages and losses entitling him to compensatory damages in amounts to be determined at trial. These injuries include, but are not limited to, loss of constitutional and state rights, physical injuries, extraordinary pain and suffering, emotional distress, and past and future medical bills.

25. After having his arm broken, J.R. filed a grievance with the JTDC.

26. On August 20, 2018, the JTDC offered no remedy and informed J.R. that he had "exhausted the administrative remedies available to him".

## COUNT I: 42 U.S.C. § 1983 – Excessive Force
### (Sylvia Mathlock, as mother and next friend, J.R., a minor vs. Eric Fleming)

27. Plaintiff re-alleges and incorporates herein the allegations contained in Paragraphs 1 through 26 above, as if fully restated herein

28. At all material times, Mr. Fleming was clothed with the authority of state law and acting under color and authority of state law as an agent and employee of the JTDC.

29. Plaintiff had the clear and well-established right to be free from excessive force.

30. The aforementioned conduct of Mr. Fleming constituted excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

31. At all material times, Mr. Fleming knew that excessive force violated the Fourth and Fourteenth Amendments to the United States Constitution and imposed harm and/or the risk of harm. Mr. Fleming had the duty to refrain from subjecting others to deprivation of those rights.

32. The aforementioned conduct of Mr. Fleming was objectively unreasonable.

33. The aforementioned conduct of Mr. Fleming was without just cause or justification.

34. The aforementioned conduct of Mr. Fleming was so egregious that no reasonable person could have believed that it would not violate the established rights of Plaintiff.

35. The aforementioned conduct of Mr. Fleming was not rationally related to a legitimate nonpunitive governmental purpose.

36. The aforementioned conduct of Mr. Fleming appeared excessive in relation to any legitimate nonpunitive governmental purpose.

37. The aforementioned conduct of Mr. Fleming was applied maliciously and sadistically to cause harm.

38. The aforementioned conduct of Mr. Fleming deprived Plaintiff of his rights secured by the Constitution.

39.     As a proximate result of the aforementioned conduct of Mr. Fleming, Plaintiff has suffered loss of physical liberty, actual and extreme physical and emotional injuries, and other damages and losses entitling him to compensatory damages in amounts to be determined at trial.  These injuries include, but are not limited to, loss of constitutional and state rights, physical injuries, extraordinary pain and suffering, emotional distress and anguish, loss of capacity for enjoyment of life, and past and future medical costs.

40.     Plaintiff is further entitled to attorneys' fees and cost pursuant to 42 U.S.C. § 1988, prejudgment and post-judgment interest and other remedies as allowable by law.

41.     In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages, as Mr. Fleming's actions were taken maliciously, willfully and with reckless or wanton disregard of the constitutional rights of Plaintiff.

### COUNT II: 42 U.S.C. § 1983 – Excessive Force
### (Sylvia Mathlock, as mother and next friend, J.R., a minor vs. Najuan Mack)

42.     Plaintiff re-alleges and incorporates herein the allegations contained in Paragraphs 1 through 26 above, as if fully restated herein

43.     At all material times, Mr. Mack was clothed with the authority of state law and acting under color and authority of state law as an agent and employee of the JTDC.

44.     Plaintiff had the clear and well-established right to be free from excessive force.

45.     The aforementioned conduct of Mr. Mack constituted excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

46.     At all material times, Mr. Mack knew that excessive force violated the Fourth and Fourteenth Amendments to the United States Constitution and imposed harm and/or the risk of harm. Mr. Mack had the duty to refrain from subjecting others to deprivation of those rights.

47.     The aforementioned conduct of Mr. Mack was objectively unreasonable.

48.     The aforementioned conduct of Mr. Mack was without just cause or justification.

49.     The aforementioned conduct of Mr. Mack was so egregious that no reasonable person could have believed that it would not violate the established rights of Plaintiff.

50.     The aforementioned conduct of Mr. Mack was not rationally related to a legitimate nonpunitive governmental purpose.

51.     The aforementioned conduct of Mr. Mack appeared excessive in relation to any legitimate nonpunitive governmental purpose.

52.     The aforementioned conduct of Mr. Mack was applied maliciously and sadistically to cause harm.

53.     The aforementioned conduct of Mr. Mack deprived Plaintiff of his rights secured by the Constitution.

54.     As a proximate result of the aforementioned conduct of Mr. Mack, Plaintiff has suffered loss of loss of physical liberty, actual and extreme physical and emotional injuries, and other damages and losses entitling him to compensatory damages in amounts to be determined at trial.  These injuries include, but are not limited to, loss of constitutional and state rights, physical injuries, extraordinary pain and suffering, emotional distress and anguish, loss of capacity for enjoyment of life, and past and future medical costs.

55.     Plaintiff is entitled to attorneys' fees and cost pursuant to 42 U.S.C. § 1988, prejudgment and post-judgment interest and other remedies as allowable by law.

56.     In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages, as Mr. Mack's actions were taken maliciously, willfully and with reckless or wanton disregard of the constitutional rights of Plaintiff

### COUNT III: 42 U.S.C. § 1983 – *Monell Claim*
### (Sylvia Mathlock, as mother and next friend, J.R., a minor vs. Leonard Dixon and County of Cook)

57.     Plaintiff re-alleges and incorporates herein the allegations contained in Paragraphs 1 through 56 above, as if fully restated herein

58.     Pursuant to 55 ILCS 75/3(b), Superintendent Dixon has been appointed to oversee, supervise, and direct all functions relating to the JTDC. Superintendent

11

Dixon is the highest decision-maker with authority at the JTDC and is the chief architect of the policies, practices and/or customs at the JTDC. Superintendent Dixon is and was, at all relevant times herein, responsible for the hiring, screening, training, retention, supervision, discipline, counseling and control of the employees or agents of the JTDC, including Mr. Fleming and Mr. Mack.

59.     Superintendent Dixon and County of Cook were responsible for the day to day operations of the JTDC.

60.     Superintendent Dixon and County of Cook had in effect policies, practices or customs that condoned and fostered the unconstitutional conduct of the Defendants.

61.     Superintendent Dixon and County of Cook engaged in the policy, practice and custom of: (i) failing to hire, train and place individuals with experience and training to correctly assess the need for physical force; (ii) failing to hire, train and place individuals with experience and training to perform supervision procedures over detainees in the JTDC; (iii) failing to hire, train and place individuals with experience and training to correctly apply physical force; and (iv) failing to properly supervise members of the JTDC including Mr. Fleming and Mr. Mack.

62.     Superintendent Dixon and County of Cook had either actual or constructive knowledge of the deficient policies, practices and customs and despite this knowledge, condoned, tolerated and through their own actions or inactions thereby ratified such policies.

63.     Superintendent Dixon and County of Cook were deliberately indifferent and reckless with respect to potential violations of constitutional rights.

64.     Plaintiff suffered a deprivation of a constitutional right and had the right to be free from the violation of his constitutional right.

65.     Plaintiff suffered this deprivation as a result of an express policy, widespread custom or practice, or deliberate act of a decision-maker with final policymaking authority.

66.     Superintendent Dixon's and County of Cook's policies, practices, customs and/or failures were the moving force behind the actions of Defendants resulting in the injuries to Plaintiff.

67.     Superintendent Dixon and County of Cook acted under the color of state law to deprive Plaintiff of his Constitutional Rights.

68.     As a direct and proximate result of Superintendent Dixon's and County of Cook's deliberate indifference, Plaintiff has a suffered a loss of his Fourth and Fourteenth Amendment rights.

69.     As a direct and proximate result of Superintendent Dixon's and County of Cook's policies, Plaintiff has suffered loss of physical liberty, actual and extreme physical and emotional injuries, and other damages and losses entitling him to compensatory damages in amounts to be determined at trial. These injuries include, but are not limited to, loss of constitutional and state rights, physical injuries, extraordinary pain and suffering, emotional distress and anguish, loss of capacity for enjoyment of life, and past and future medical costs.

13

## COUNT IV: 42 U.S.C. § 1983 – *Monell Claim*
### (Sylvia Mathlock, as mother and next friend, J.R., a minor vs. Office of Chief Judge of Circuit Court of Cook County and County of Cook) (in the alternative to COUNT III)

70.     Plaintiff re-alleges and incorporates herein the allegations contained in Paragraphs 1 through 56 above, as if fully restated herein

71.     The Office of the Chief Judge of Circuit of Cook County had the power to appoint and remove superintendents of the JTDC.

72.     The JTDC was under the authority and supervision of the Office of the Chief Judge of Circuit Court of Cook County and the County of Cook

73.     The Office of the Chief Judge of Circuit Court of Cook County and County of Cook was given custody and charge of the JTDC.

74.     The Office of the Chief Judge of Circuit Court of Cook County and County of Cook had in effect policies, practices or customs that condoned and fostered the unconstitutional conduct of the Defendants.

75.     The Office of the Chief Judge of Circuit Court of Cook County and County of Cook engaged in the policy, practice and custom of: (i) failing to hire, train and place individuals with experience and training to correctly assess the need for physical force; (ii) failing to hire, train and place individuals with experience and training to perform supervision procedures over detainees in the JTDC; (iii) failing to hire, train and place individuals with experience and training to correctly apply physical force; and (iv) failing to properly supervise members of the JTDC including Mr. Fleming and Mr. Mack.

14

76.     The Office of the Chief Judge of Circuit Court of Cook County and County of Cook had either actual or constructive knowledge of the deficient policies, practices and customs and despite this knowledge, condoned, tolerated and through their own actions or inactions thereby ratified such policies.

77.     The Office of the Chief Judge of Circuit Court of Cook County and County of Cook was deliberately indifferent and reckless with respect to potential violations of constitutional rights.

78.     Plaintiff suffered a deprivation of a constitutional right and had the right to be free from the violation of his constitutional right.

79.     Plaintiff suffered this deprivation as a result of an express policy, widespread custom or practice, or deliberate act of a decision-maker with final policymaking authority.

80.     The Office of the Chief Judge of Circuit Court of Cook County's and County of Cook's policies, practices, customs and/or failures were the moving force behind the actions of Defendants resulting in the injuries to Plaintiff.

81.     As a direct and proximate result of The Office of the Chief Judge of Circuit Court of Cook County's and County of Cook's deliberate indifference, Plaintiff has a suffered a loss of his Fourth and Fourteenth Amendment rights.

82.     As a direct and proximate result of The Office of the Chief Judge of Circuit Court of Cook County's  and County of Cook's policies, Plaintiff has suffered loss of physical liberty, actual and extreme physical and emotional injuries, and other damages and losses entitling him to compensatory damages in amounts to be

determined at trial. These injuries include, but are not limited to, loss of constitutional and state rights, physical injuries, extraordinary pain and suffering, emotional distress and anguish, loss of capacity for enjoyment of life, and past and future medical costs.

## COUNT V – Breach of Fiduciary Duty
### (Sylvia Mathlock, as mother and next friend, J.R., a minor vs. Eric Fleming, Najuan Mack, and Leonard Dixon)

83.     Plaintiff re-alleges and incorporates herein the allegations contained in Paragraphs 1 through 82 above, as if fully restated herein

84.     Mr. Fleming, Mr. Mack and Superintendent Dixon each had a fiduciary relationship with J.R., a minor, detained and housed at the JTDC.

85.     Mr. Fleming, Mr. Mack and Superintendent Dixon each owed Plaintiff the duty to assume responsibility for his safety and well-being, the duty of safekeeping, the duty to protect him from harm, and the duty to act in his best interest.

86.     As described more fully throughout this Complaint, Mr. Fleming, Mr. Mack and Superintendent Dixon each breached these duties owed to Plaintiff.

87.     As a proximate result of this breach of fiduciary duties, Plaintiff has suffered loss of physical liberty, actual and extreme physical and emotional injuries, and other damages and losses entitling him to compensatory damages in amounts to be determined at trial. These injuries include, but are not limited to, loss of constitutional and state rights, physical injuries, extraordinary pain and suffering,

emotional distress and anguish, loss of capacity for enjoyment of life, and past and future medical costs.

### COUNT VI – Intentional Infliction of Emotional Distress
**(Sylvia Mathlock, as mother and next friend, J.R., a minor vs.
Eric Fleming, Najuan Mack, and Leonard Dixon)**

88.     Plaintiff re-alleges and incorporates herein the allegations contained in Paragraphs 1 through 87 above, as if fully restated herein.

89.     The actions, omissions and conduct of Mr. Fleming, Mr. Mack and Superintendent Dixon respectively set forth in this Complaint were extreme and outrageous.

90.     The actions, omissions and conduct of Mr. Fleming, Mr. Mack and Superintendent Dixon respectively set forth in this Complaint went beyond all possible bounds of decency and is regarded as intolerable in a civilized community.

91.     The actions, omissions and conduct of Mr. Fleming, Mr. Mack and Superintendent Dixon respectively set forth in this Complaint, arose from their improper use of a position of power which gave them the ability to adversely affect Plaintiff's interests.

92.     The actions, omissions and conduct of Mr. Fleming, Mr. Mack and Superintendent Dixon respectively set forth in this Complaint were rooted in an abuse of power and authority.

93.     The actions, omissions and conduct of Mr. Fleming, Mr. Mack and Superintendent Dixon respectively set forth in this Complaint were undertaken with

the intent to cause, or knowledge that there was a high probability that their conduct would cause, severe emotional distress to Plaintiff.

94.     The actions, omissions and conduct of Mr. Fleming, Mr. Mack and Superintendent Dixon respectively set forth in this Complaint had a position of power and knew that Plaintiff, a juvenile detainee, was susceptible to emotional distress due to his known mental health issues and other circumstances of his confinement.

95.     Mr. Fleming, Mr. Mack and Superintendent Dixon respectively knew Plaintiff was particularly susceptible to emotional distress and acted inappropriately despite this knowledge.

96.     As a direct and proximate result of Mr. Fleming, Mr. Mack and Superintendent Dixon's respective actions, Plaintiff suffered emotional distress.

## COUNT VII– Respondeat Superior
### (Sylvia Mathlock, as mother and next friend, J.R., a minor vs. Office of the Chief Judge of Cook County and County of Cook)

97.     Plaintiff re-alleges and incorporates herein the allegations contained in Paragraphs 1 through 96 above, as if fully restated herein

98.     While committing the misconduct alleged in Counts V and VI in this Complaint, Superintendent Dixon, Mr. Fleming and Mr. Mack were employees and agents of Cook County and/or the Office of the Chief Judge of the Circuit Court of Cook County and acting within the scope of their authority or employment.

99.     Cook County and/or the Chief Judge of the Circuit Court of Cook County are liable in principal for all misconduct committed by these employees and agents.

## COUNT VIII– Indemnification – 745 ILCS 10/9-102
### (Sylvia Mathlock, as mother and next friend, J.R., a minor vs. County of Cook)

100.    Plaintiff re-alleges and incorporates herein the allegations contained in Paragraphs 1 through 99 above, as if fully restated herein

101.    Illinois law provides that public entities are directed to pay any tort judgments for compensatory damages for which employees are liable within the scope of their employment activities.

102.    Superintendent Dixon, Mr. Fleming and Mr. Mack were employees of Defendants Cook County and/or the Chief Judge of the Circuit Court of Cook County and acting within the scope of their employment in committing the misconduct described herein.

103.    Cook County is obligated by Illinois law to pay any judgment relating to the operation of the JTDC entered against Defendants.

**WHEREFORE,** Plaintiff SYLVIA MATHLOCK, as mother and next of friend of J.R., a minor, demands a jury trial for all issues so appropriate and requests that this Court issue the following relief in their favor against the Defendants:

a.  A judgment ordering the payment of compensatory damages;

b.  A judgment ordering the payment of punitive damages;

c.  An order for pre-judgment and post-judgment interest;

d.  An order and judgment granting reasonable attorneys' fees and costs; and

e.  Any other relief this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demand a trial by jury.

Respectfully Submitted,

HART McLAUGHLIN & ELDRIDGE

/s/ Steven A. Hart
One of the Attorneys for Plaintiff

Steven A. Hart #6211008
Jack B. Prior # 6306767
**HART McLAUGHLIN & ELDRIDGE, LLC**
22 W. Wacker Drive, Suite 1600
Chicago, Illinois 60602
Tel:    (312) 955-0545
Fax:   (312) 971-9243
shart@hmelegal.com
jprior@hmelegal.com

Andrew M. Stroth
**ACTION INJURY LAW GROUP, LLC**
191 North Wacker Drive, Suite 2300
Chicago, Illinois  60606
Tel:    (844) 878-4LAW
Fax:   (312) 641-6866
astroth@actioninjurylawgroup.com

***Attorneys for Plaintiff***