UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SYLVIA MATHLOCK, as mother and next friend of J.R., a minor, | |
| Plaintiff, | No. 18 CV 6406 |
| v. | Judge Manish S. Shah |
| ERIC FLEMING, NAJUAN MACK, LEONARD DIXON, OFFICE OF THE CHIEF JUDGE OF THE CIRCUIT COURT OF COOK COUNTY, and COUNTY OF COOK, ILLINOIS, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

While J.R. (a minor) was detained at the Cook County Juvenile Temporary Detention Center, defendants Eric Fleming and Najuan Mack aggressively handcuffed him, breaking his arm and causing other injuries. Sylvia Mathlock, J.R.'s mother, now brings 42 U.S.C. § 1983 and state-law claims on J.R.'s behalf. J.R. sues Fleming and Mack (both detention center employees), Superintendent Leonard Dixon, the Office of the Chief Judge, and Cook County. The Office of the Chief Judge and Cook County move to dismiss all claims against them, and Dixon moves to dismiss the § 1983 official-capacity claim against him. For the reasons discussed below, these motions are granted.

I.   **Legal Standards**

A motion to dismiss under Rule 12(b)(6)[1] tests whether a complaint states a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(6). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). I draw all reasonable inferences in favor of the non-movant. *Squires-Cannon v. Forest Preserve Dist. of Cook Cty.*, 897 F.3d 797, 802 (7th Cir. 2018).

II.  **Background**

J.R., a fifteen-year-old boy, was detained at the Cook County Juvenile Temporary Detention Center. [1] ¶ 1.[2] Defendants Eric Fleming and Najuan Mack worked at the detention center, where they were members of the Rapid Response Team and responsible for ensuring safety and security. *Id.* ¶¶ 4–5. On July 19, 2018, Mack and Fleming aggressively handcuffed J.R., breaking his arm in the process. *Id.* ¶ 22. J.R. suffered extreme internal rotation of his arm, a displaced fracture of the surgical neck of his right humerus, and a broken humerus head. *Id.* ¶ 23. In addition

---

[1] Dixon and the Office of the Chief Judge also move to dismiss under Rule 12(b)(1). A Rule 12(b)(1) motion tests the jurisdictional sufficiency of the complaint. *Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017). But because the Eleventh Amendment "does not curtail subject-matter jurisdiction," *see Endres v. Ind. State Police*, 349 F.3d 922, 925 (7th Cir. 2003), Rule 12(b)(1) is not the proper procedural avenue for dismissal.

[2] Bracketed numbers refer to entries on the district court docket.

to his physical pain and suffering, the incident caused J.R. emotional distress. *Id.* ¶ 24.

Defendant Leonard Dixon was the superintendent at the time of the incident. *Id.* ¶ 6. As superintendent, Dixon oversaw, supervised, and directed all functions of the detention center. *Id.* ¶ 58. He was also the chief architect of its policies and was responsible for hiring, screening, training, retaining, supervising, and disciplining all detention center employees. *Id.* The Chief Judge of the Circuit Court of Cook County appointed Superintendent Dixon in May 2015. *Id.* ¶ 19. His appointment marked the end of a long transition period, during which administrative authority over the detention center was transferred from the Cook County Board to the Office of the Chief Judge. That transition began in 1999, when the ACLU filed a federal civil rights class action against Cook County alleging systemic mistreatment and neglect at the detention center. *Id.* ¶ 15. Eight years later, after determining that Cook County was not complying with the terms of the resulting settlement agreement, the district court appointed a transitional administrator to operate the detention center and bring it into compliance with the court's orders. *Id.* ¶ 16. The court also tasked the administrator with transitioning administrative authority over the detention center to the Office of the Chief Judge of the Circuit Court of Cook County. *Id.* A few months later, the Illinois legislature passed a similar bill, transferring administrative authority of the Cook County Juvenile Temporary Detention Center to the Office of the Chief Judge. *Id.* ¶ 17. The bill became effective January 1, 2008, though the detention center remained under control of the court's temporary administrator until

2015, when the court ordered that control be transferred to the Office of the Chief Judge. *Id.* ¶¶ 17–18.

## III. Analysis

The Office of the Chief Judge and Cook County move to dismiss the § 1983 and respondeat superior claims, and Cook County asserts it is not a necessary party for indemnification purposes. Dixon moves to dismiss only the § 1983 claim against him in his official capacity.

### A. Section 1983

The complaint alleges that the Office of the Chief Judge, Dixon, and Cook County are liable under a *Monell* theory for Mack's and Fleming's use of excessive force. More specifically, it alleges that the three government defendants failed to hire, train, and supervise detention center employees to prevent their unnecessary use of force. Defendants argue both that the Eleventh Amendment bars the § 1983 claim and that the complaint fails to allege a policy or practice as required to state a *Monell* claim.

*1. Eleventh Amendment Immunity*

Because the Eleventh Amendment bars suits against states but not against local governments, the parties' dispute centers on whether administering the Juvenile Temporary Detention Center is a state or county function.[3] (In Illinois, the Office of the Chief Judge is a state entity. *See Drury v. McLean Cty.*, 89 Ill.2d 417,

---

[3] J.R. does not assert that the state has consented to this suit or that Congress has abrogated the state's Eleventh Amendment immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)

4

427 (1982).) Defendants argue that the chief judge controls the detention center, making it an arm of the state and barring the § 1983 suit for damages. *See Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir. 1992) (noting that the Eleventh Amendment extends immunity to state officials sued in their official capacities). J.R. asserts that Cook County operates the detention center and that, therefore, the Eleventh Amendment does not bar his claims. J.R. does not dispute that as the superintendent, Dixon's actions represent official policy. *See McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 785 (1997). In determining whether Dixon acted as an arm of the state, then, the relevant question is whether he is a final policymaker for Illinois or Cook County on the particular issue of hiring, training, and supervising detention center employees. *Id*. The question is not whether he is a state official "in some categorical 'all or nothing' manner." *Id*.

Both the chief judge and the county manage different aspects of the detention center. To determine whether the detention center functions as an arm of the state for Eleventh Amendment purposes, I consider the extent of its financial autonomy from the state and its general legal status. *Tucker v. Williams*, 682 F.3d 654, 659 (7th Cir. 2012); *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 47 (1994) ("When indicators of immunity point in different directions, the Eleventh Amendment's twin reasons for being remain our prime guide."). The latter inquiry—the general legal status of the center—requires analyzing state law; though an official's actual function, and not simple labeling as a state or county official, is what matters.

*McMillian*, 520 U.S. at 786; *Kashani v. Purdue Univ.*, 813 F.2d 843, 847 (7th Cir. 1987).

Though the Illinois Constitution does not mention juvenile detention centers, or even juvenile justice more broadly, the Juvenile Court Act of 1987 (which is found in Chapter 705 of the Illinois Compiled Statutes, called "Courts") lists the goals of the juvenile justice system and instructs that policies shall be designed to provide "secure confinement for minors" and "supervision and service coordination where appropriate." 705 ILCS 405/5-101. The County Shelter Care and Detention Home Act provides that a county board may purchase, erect, lease, support, and maintain a detention home for the care and custody of delinquent minors. 55 ILCS 75/1(a). The county board may also levy and collect a tax to fund and maintain the facilities. *Id*. If any county board determines that a facility has become obsolete, it may, by majority vote of the board, rebuild or replace the home. 55 ILCS 75/1(b). The county board fixes the salaries of appointed individuals, 55 ILCS 75/3(a), and upon the superintendent's request, furnishes the supplies or repairs necessary to operate a detention center. 55 ILCS 75/3(d). The board then audits and pays the bills for those supplies in the same manner as it would for other county institutions. *Id*. A county's electors can vote to repeal the County Shelter Care and Detention Home Act in their county. 55 ILCS 75/7.

The chief judge appoints the superintendent, along with "all other necessary personnel," and those individuals serve at the pleasure of the chief judge. 55 ILCS

75/3(a), (b). The chief judge also has administrative control over the detention center's budget, subject to the county board's approval. 55 ILCS 75/3(c).

In sum, while the county creates, funds, and can replace the detention center, the chief judge controls its budget and the day-to-day conduct of its officials. Though courts consistently cite financial autonomy as the most important consideration, *see, e.g., Tucker*, 682 F.3d at 659, financial autonomy does not dictate the outcome when it does "not translate into control." *See McMillian*, 520 U.S. at 791; *see also Drury*, 89 Ill.2d at 425 ("The fact that counties pay the salaries and expenses of the circuit court clerks does not make the office of circuit court clerk a county office."). Here, the county's role in approving the center's budget and setting the salaries of its officials does not outweigh the chief judge's more direct control. Even if the county indemnified Dixon in his official capacity, that financial involvement has no connection to control over Dixon's conduct. *See Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 430–31 (1997) (noting there is no reason that "a third party's undertaking to indemnify the agency should determine whether it is the kind of entity that should be treated as an arm of the State"). And because the relevant, narrow question is whether Dixon acted on behalf of the state when hiring, training, and supervising detention center employees to prevent excessive force, the chief judge's control over those aspects of the detention center leads to the conclusion that Dixon (in his official capacity) is entitled to immunity. The chief judge is a state official, and Dixon exercised the judge's control, not the county's fiscal authority, when he supervised Fleming and Mack.

J.R.'s incident took place in 2018, three years after the county board had transferred its control to the chief judge and the chief judge had appointed Dixon. But the history of the Cook County Juvenile Temporary Detention Center further supports the conclusion that at the time of the incident, Dixon acted on behalf of the state. When the county failed to adequately administer the detention center, the court (followed by the Illinois legislature) transferred control to the Office of the Chief Judge, ensuring that it, and not the county, administered the detention center going forward. *See Doe v. Cook County, Illinois*, 798 F.3d 558, 560 (7th Cir. 2015). And it is not the case that administering juvenile detention centers has traditionally been considered a county function throughout Illinois. Though before 2008 the county board administered the detention center in Cook County, courts administered the juvenile detention facilities in all other counties. *See House of Representatives Transcription Debate*, H.B. 236, 95th General Assembly, 32nd Legislative Day. 47–48 (March 28, 2007) ("As I said, all the … all the other counties in the state currently give control of the detention centers to the chief judge and that's all this Bill would do."). This was not a mere change in labeling to manufacture immunity; the purpose of this shift was to take control away from the county board and give it to the chief judge.

Nor is this result inconsistent with the fact that in Illinois, sheriffs act as county officials when administering adult jails. *See DeGenova v. Sheriff of DuPage Cty.*, 209 F.3d 973, 976 (7th Cir. 2000). Illinois law distinguishes juvenile justice from other aspects of the criminal justice system; because juvenile justice focuses primarily

8

on rehabilitation, the proceedings are not criminal in nature. *In re Rodney H.*, 223 Ill. 2d 510, 520 (2006). Moreover, the Illinois Constitution lists sheriffs as county officers, and Illinois courts have consistently held the same. *See, e.g., Moy v. Cty. of Cook*, 159 Ill.2d 519, 526–27 (1994). These facts, which weigh strongly in favor of the conclusion that sheriffs are generally county officers, *see DeGenova*, 209 F.3d at 975, are not present for juvenile detention centers or the superintendents who administer them.

Dixon and the Office of the Chief Judge acted arms of the state and therefore, the Eleventh Amendment bars the claims at issue against them. Eleventh Amendment immunity is an affirmative defense, and "a plaintiff ordinarily need not anticipate and attempt to plead around affirmative defenses." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). However, dismissal is appropriate where the allegations in the complaint unambiguously satisfy the elements of the affirmative defense. *Id*. Here, it is clear from the allegations in the complaint and applicable law that operating the detention center is a state function warranting immunity, and dismissal is appropriate.[4]

2.   *Monell*

If Eleventh Amendment immunity did not apply, the *Monell* claim would be dismissed for failure to state a claim. A plaintiff must plausibly allege that a policy or custom caused the constitutional violation, as opposed to individual acts of the entity's agents. *Glisson v. Ind. Dept. of Corrs.*, 849 F.3d 372, 379 (7th Cir. 2017). A

---

[4] The state is not a "person" who can be sued under § 1983. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 64–66 (1989). J.R. cannot pursue the § 1983 official-capacity claim against Dixon and the Office of the Chief Judge, because it is against the state.

9

plaintiff can satisfy this requirement by alleging an official policy or informal custom that caused the constitutional deprivation, or by alleging that a final decisionmaker, whose acts may fairly be said to represent official policy, performed the unconstitutional act. *Id*. A municipality may be liable under § 1983 for a deprivation of rights caused by a failure to screen, hire, train, or supervise its employees, but these claims are the "most tenuous" type of *Monell* claim. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see also Lenard v. Argento*, 699 F.2d 874, 885 (7th Cir. 1983). To prevail, a plaintiff must show that the alleged failure amounts to a decisionmaker's deliberate indifference to the plaintiff's rights. *Connick*, 563 U.S. at 62. "At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Lenard*, 699 F.2d at 885. This typically requires that a plaintiff allege a pattern of similar constitutional violations, such that policymakers had notice of the inadequacy and deliberately chose to continue adhering to the practice despite the consequences. *Connick*, 563 U.S. at 62.

The complaint makes no reference to any other instances of excessive force to support an inference that decisionmakers at the detention center had notice of any of the purported deficiencies in their hiring, training, or supervision practices. Without alleging that Dixon or any other decisionmaker had notice of other instances of excessive force, the complaint does not allege the deliberate indifference required to state a *Monell* claim.

There is no *Monell* claim against Cook County because, for the same reasons discussed in the immunity context, Dixon acts on behalf of the Office of the Chief Judge—the state, not the county—when administering the detention center. *See Thompson v. Duke*, 882 F.2d 1180, 1187 (7th Cir. 1989) (holding that because the sheriff, and not the county, supervised and controlled the Cook County Jail and Department of Corrections, any failure-to-train policy could not be attributed to the county).[5] Because the county has no control over hiring, firing, or training at the detention center, its policies could not have caused the constitutional violation.

**B.    Respondeat Superior**

The complaint names the Office of the Chief Judge and Cook County under a respondeat superior theory of liability. To state a claim for respondeat superior under Illinois law, a plaintiff must allege: (1) a principal-agent or employer-employee relationship existed, (2) the principal controlled, or had the right to control, the conduct of the employee or agent, and (3) the alleged conduct of the agent or employee fell within the scope of the agency or employment. *Wilson v. Edward Hosp.*, 2012 IL 112898, ¶ 18. J.R. does not dispute that there is no respondeat superior liability for the § 1983 claims. *See Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001). Instead, he asserts that the Office of the Chief Judge and Cook County are liable for the detention center employees' state-law violations.

---

[5] J.R. cites *Anderson v. Gutschenritter*, 836 F.2d 346 (7th Cir. 1988) for the proposition that Illinois counties are liable for certain acts of sheriffs who set jail-management policies. *Id.* at 349. But in *Anderson*, the court did not decide that issue on the merits because the county did not dispute that the sheriff's actions could be considered county policy.

11

The Eleventh Amendment bars the state-law claims against the chief judge. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) ("[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment."). And Cook County cannot be liable for the acts of detention center employees because it did not control, or have the right to control, their conduct. Joint-employer liability is generally a question of fact. *See Robinson v. Sappington*, 351 F.3d 317, 338–39 (7th Cir. 2003). But because the Illinois Constitution contemplates a unified court system and separation of powers among the three branches, the county is precluded from exercising control over nonjudicial court employees. *Orenic v. Ill. State Labor Relations Bd.*, 127 Ill.2d 453, 474–80 (1989) (noting that, though federal labor law principles may indicate otherwise, "the counties' salary-setting and facilities-providing function" does not warrant joint-employer status).[6] And where the law is clear that a government entity has no control over the conduct alleged, no question of fact remains. *See, e.g., Moy*, 159 Ill.2d at 524–27 (holding, at the motion-to-dismiss stage, that although the sheriff is a county officer, the county has insufficient control over the sheriff's actions to hold it vicariously liable for his conduct). In this context, the county has insufficient control over detention center employees to be held liable under respondeat superior for their conduct. Because the chief judge enjoys immunity

---

[6] Though *Orenic* considered the question of joint-employer status in the context of collective bargaining under the Illinois Public Labor Relations Act, it confronts the similar issue of whether county funding of a court entity is enough to hold the county accountable for the acts of that entity's employees.

and the county does not and cannot control the conduct of detention center employees, the respondeat superior claims are dismissed.

### C. Indemnification

J.R. asserts that Cook County is a necessary party to this suit as an indemnifier. Because the county funds the Juvenile Temporary Detention Center, J.R. argues, it would be required to pay a judgment entered against its superintendent in his official capacity. *See Carver v. Sheriff of La Salle Cty.*, 203 Ill.2d 497, 522 (2003) (analyzing the Local Government Tort Immunity Act and the Counties Code). And where "state law requires the county to pay, federal law deems it an indispensable party to the litigation." *Carver v. Sheriff of LaSalle Cty.*, 324 F.3d 947, 948 (7th Cir. 2003); *see also Robinson*, 351 F.3d at 338–40 (holding that the county was a necessary party to a judicial employee's hostile work environment and sexual harassment claims). The county is not, however, a necessary party for individual-capacity claims against the sheriff. *See Askew v. Sheriff of Cook Cty., Ill.*, 568 F.3d 632, 636–37 (7th Cir. 2009). Dixon and the chief judge argue that because they are state employees, the State Employee Indemnification Act governs, and the state—not the county—would indemnify any judgments against them in either their official or individual capacities. *See* 5 ILCS 350/2(c), (g). Either way, because the Eleventh Amendment bars the official capacity claims, and because the county is not a necessary party to individual-capacity claims, Cook County is not a necessary party to this suit.

## IV. Conclusion

The motions to dismiss [12], [21], and [27] are granted. The Office of the Chief Judge and Cook County are dismissed as defendants. The official-capacity claim against Dixon is also dismissed, but Dixon remains a defendant in his individual capacity. Leave to amend the complaint should be freely given. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.,* 786 F.3d 510, 518 (7th Cir. 2015). But because Cook County is not a necessary party and the Eleventh Amendment bars the claims at issue here, leave to amend would be futile, and the dismissal is with prejudice.

ENTER:

/s/ Manish S. Shah
Manish S. Shah
United States District Judge

Date: July 3, 2019